John DOE, a minor child by his mother and next friend, Mary Doe, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

The COUNTY OF LAKE, INDIANA, et al., Defendants.

No. H 74–49.

United States District Court,
N. D. Indiana,
Hammond Division.

Aug. 20, 1975.

through, and it does that with both devices." (Vol. 6 transcript, pp. 105–108, 110. Verbatim quote.)

17. Vol. 6, pp. 4–5 of transcript.

Seymour Moskowitz, Gary, Ind., for plaintiffs.

James J. Richards, Hammond, Ind., J. Robert Miertschin, Gary, Ind., Joseph Skozen, Munster, Ind., William J. Muha, Highland, Ind., Robert D. Hawk, Gary, Ind., Joseph Meszar, pro se, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The defendants, Judges James J. Richards and Joseph Meszar, contend that they have judicial immunity from suit, which encompasses any action under 42

U.S.C. § 1983, as brought by the plaintiffs in the instant action.

The principle of judicial immunity has been long a part of our common law and the rationale for the same was succinctly stated by the Supreme Court of the United States in the early case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), as follows:

> "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. * * *
>
> "Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. * * *
>
> "If civil actions could be maintained . . . against the judge, because the losing party should see fit to allege in his complaint, that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action." 80 U.S. (13 Wall.) 335, 347–348, 20 L.Ed. 646, 649–650.)

Using 42 U.S.C. § 1983 as the basis, the plaintiffs challenge the adequacy of the Juvenile Detention Center and the treatment of the juveniles detained therein, and seek to require the implementation of the treatment of said juveniles and to meet certain standards set forth by plaintiffs. Finally, plaintiffs seek to assess both what they claim to be actual and punitive damages against the defendants, and seek other alleged proper relief.

Such statute (42 U.S.C., § 1983) relied upon by plaintiffs reads as follows:

> "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."

■ The Supreme Court of the United States in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), clearly dispelled any doubts that the principle of judicial immunity extended to actions brought under 42 U.S. C. § 1983. Citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), the Court concluded that judicial immunity was a defense under a § 1983 action, and that Congress would have specifically said so if it wished to abolish the doctrine of immunity in the application of this statute. In a footnote to its holding, the Court also noted that the Court of Appeals had consistently held that judicial immunity is a defense to any action under § 1983, citing *Bauers v. Heisel*, 361 F.2d 581 (3rd Cir. 1966), and cases cited therein. (87 S.Ct. at 1218, n. 9).

Likewise, the United States Court of Appeals for the Seventh Circuit has held that the doctrine of judicial immunity from suit applies in § 1983 cases. *Dieu v. Norton*, 411 F.2d 761 (7th Cir. 1969), *Byrne v. Kysar*, 347 F.2d 734 (7th Cir. 1965), *Duzynski v. Nosal*, 324 F.2d 924 (7th Cir. 1963). See also *O'Shea v. Lit-*

*tleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L. Ed.2d 674 (1973).

The defendants, Richards and Meszar here have been sued in both their official and individual capacities. The Court of Appeals for the Seventh Circuit stated.

"Section 1983 has been held to apply solely and exclusively to acts by state officers who use their authority, or misuse it, or purport to use their authority (although, in fact, acting outside their official function) to deprive a person of federally protected rights. Private persons, although they may in fact deprive another person of federally protected rights, are not liable under Sec. 1983." *Duzynski v. Nosal*, 324 F.2d 924, 930. (7th Cir. 1963).

Defendants, Chief Judge James J. Richards and Juvenile Judge Joseph Meszar, both of the Lake County Superior Court, filed a Motion to Dismiss with supporting memorandum on June 26, 1975. Defendants' Motion is apparently based on two separate and distinct grounds: (1) that the defendant judges are completely immunized and protected from this suit under the doctrine of judicial immunity, and (2) that the defendant judges cannot be sued in their individual capacities in a § 1983 action.

■ Despite its fundamental and efficacious purpose, the doctrine of judicial immunity is not absolute and unlimited; it does not immunize every state court judge in every lawsuit. On the contrary, application of the doctrine is restricted to its single objective: to protect judicial freedom in the delicate process of deciding civil and criminal matters on their merits. Where the initiative and independence of the judiciary will not be effectively impaired, courts have refused to apply the doctrine of judicial immunity. For example, there is no official immunity from criminal liability. *O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

The Supreme Court recognized long ago that a state court judge can be made to answer criminally for violating the criminal provisions of the Civil Rights Act. *Ex parte Virginia*, 100 U.S. 399, 25 L.Ed. 676 (1879). In addition, federal courts have held that application of the doctrine is restricted to the following areas:

1. immunity applies only when judges are faced with suits involving their judicial as opposed to ministerial or administrative duties, and

2. immunity applies only when officials are sued for damages.

■ Since the present suit is directed solely at the defendant judges' administrative and ministerial duties and only requests equitable relief necessary to safeguard plaintiffs' constitutional rights, application of the doctrine would be inapropos. Although plaintiffs do seek damages from the other defendants, they may not seek damages from the judges in this case as far as the damage aspect of the case is concerned it may have no application to Richards and Meszar.

■ Whether an act is judicial as opposed to ministerial or administrative is to be determined by the character of the act and not by the character of the actor. The first case to recognize this distinction was *Ex Parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879), where a judge of a Virginia Circuit Court was indicted under the predecessor of 18 U.S.C. § 243, for excluding from the grand and petit jury lists the names of black citizens who were otherwise qualified. The Court rejected the petitioner's contention that he was immune from criminal indictment because he was acting in the performance of a judicial act, stating that:

"Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as

to one holding the office of a judge . . . .. It is merely a ministerial act."

100 U.S. at 348.

■ Many courts have recognized that a cause of action, seeking equitable relief, may be brought against a judicial officer in his administrative capacity. A recent holding by this court specifically recognized the distinction between suits brought against administrative as opposed to judicial acts. In *Noe v. County of Lake,* Civil No. 73 H 157 (N.D.Ind. Nov. 1, 1973), one of the defendants, a state court judge, moved to dismiss himself from the case on the ground of judicial immunity. *Noe* involved a § 1983 suit by indigent persons against county officials, alleging that plaintiffs received inadequate representation from the Lake County Public Defender system in violation of their constitutional rights. The defendant judge was an integral part of the system that appointed and administered the Public Defender system in Lake County. In an Order dated November 1, 1973, the late Judge Beamer stated that:

> "[t]he motion to dismiss filed by the remaining defendants on the ground of judicial immunity would appear to be foreclosed by the recent decision in *Littleton v. Berbling,* 468 F. 2d 389 (7th Cir. 1972) . . . the Court agrees with plaintiffs that jurisdiction is proper . . . because the complaint is directed at administrative rather than judicial acts."
> Id.

In *Dommer v. Hatcher,* Civil No. 72 H 298 (N.D.Ind. June 21, 1974), a suit against various city official and judicial officers challenging the Gary City Police practice of arresting individuals and holding them "for investigation," this Court denied a claim of judicial immunity, stating, "[p]laintiffs seek no damages and the complaint is directed at administrative acts." Id. The judge was a defendant in *Dommer* because of his alleged failure to bring persons accused of a crime before the criminal

court within a reasonable time after arrest.

■ A judge can also be sued for failing to perform administrative acts in violation of the constitutional rights of certain citizens. In *Bramlett v. Peterson,* 307 F.Supp. 1311 (M.D.Fla.1969), Florida justices of the peace were sued under 42 U.S.C. § 1983 for failing to inform indigent misdemeanants of the right to court-appointed counsel before trial and for failure to appoint an attorney for them in the absence of an intelligent and voluntary waiver. Against a claim of judicial immunity, the court held that since "the right's guaranty is particularly clear, there is no infringement of the judicial function or judicial discretion . . ." 307 F.Supp. at 1322.

The plaintiffs' complaint in the instant suit is directed solely at the administrative and ministerial duties of the defendant judges. Judge Richards, as Chief Judge of the Lake County Superior Court is generally responsible for the administration of the court. I.C. 33–5–29.5–19 (Burns § 4–1919). Judge Meszar, as Judge of the Juvenile Division of the Lake Superior Court is generally responsible for administering that court, controls the probation department and the Juvenile Detention Home, and is generally responsible for the care and control of juveniles after they have been taken into custody. Plaintiffs are challenging the adequacy of the Juvenile Detention Center and the "treatment" which the juveniles detained there purportedly receive. Plaintiffs seek to require a treatment program which will meet the minimum statutory and constitutional standards required to detain juveniles. In addition, plaintiffs seek to change various procedures regarding the "processing" of juveniles from the time of arrest to appearance in court. Determination of these issues and implementation of any required remedies will in no way impair, interfere or otherwise affect the discretion required by these defendants in making case-by-case deci-

sion on the merits of individual juvenile situations. The plaintiffs herein are concerned only with the efficient and lawful administration of the Lake County Juvenile Detention Home and certain procedures between arrest and first appearance in court.

 Case law clearly supports the position that judicial immunity should apply only to suits for damages against a judge acting in his judicial capacity, and not to a class action seeking equitable relief. The Seventh Circuit in *Jacobson v. Schaefer,* 441 F.2d 127 (7th Cir. 1971), specifically stated that the doctrine of judicial immunity applied "only to *damage* suits against judges." Id. at 130. (Emphasis added). The following year, after a complete historical review of judicial immunity in *Littleton v. Berbling,* 468 F.2d 389 (7th Cir. 1972), rev'd on other grounds sub nom., *O'Shea v. Littleton,* 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974), this circuit held that:

> "the legislative history [of the Civil Rights Acts] presents a strong case for finding that most immunities were meant to be swept away, at least for intentional deprivations of a class's rights."

468 F.2d at 403. See also, *Hampton v. City of Chicago, Cook County, Illinois,* 484 F.2d 602 (7th Cir. 1973). In regard to the propriety of equitable relief against a state court judge, the Court of Appeals concluded that "in sum, those courts which have considered the issue have held that when a class-discrimination is alleged, judicial officers may be enjoined." 468 F.2d at 408.

Although *Littleton* was reversed by the Supreme Court because there was no case or controversy, *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), judicial immunity was not in issue and therefore *Littleton's* holding on immunity is still determinative in the Seventh Circuit. The position in *Littleton* regarding judicial immunity was recently reaffirmed in *Boyd v. Adams,* 513 F.2d 83 (7th Cir. 1975), where the court

stated, regarding prosecutorial immunity:

> "Prosecutorial immunity is a derivative of judicial immunity. *Littleton v. Berbling,* supra, at 408–410; *Robichaud v. Ronan,* 351 F.2d 533, 536 (9th Cir. 1965). In *Jacobson v. Schaefer,* 441 F.2d 127 (7th Cir. 1971), a case dealing with judicial immunity, this Court said:

> > 'We point out again that we are applying the judicial immunity doctrine *only to damage suits* against judges. *The doctrine does not reach suits for purely equitable relief.*" (441 F.2d at 130, emphasis added.)

> \* \* \* \* \* \*

> No case has been cited in the briefs, nor has our own research revealed any, which holds that a state prosecutor's immunity, or any other state official's immunity, to damage claims under the Civil Rights Act extends to injunctive remedies.

> \* \* \* \* \* \*

> Prospective, prohibitory injunctions, such as those sought here by plaintiff, will, if granted, only order defendant prosecutors to conform their conduct to the dictates of the law. No personal financial risk is involved, nor should any person be deterred from public service because of the possibility that a court may order him to conform his future conduct to the law. (Footnote omitted)

> In light of the lack of any directly contrary precedent and the inapplicability of the policy considerations which underlie the granting of immunity from damages, we hold that defendant prosecutors are not immune from that part of plaintiff's claim that seeks injunctive relief."

513 F.2d at 86–87. See *Doe v. Ceci,* 517 F.2d 1203 (page 1206 n. 3) (7th Cir. 1975). Similarly, in *Smith v. McCann,* 381 F.Supp. 1027 (E.D.Wis.1974), plaintiff sought pecuniary, injunctive and declaratory relief against the state prosecuting attorney. The court held that

the defendant was cloaked with immunity only from monetary liability. In both *Dommer v. Hatcher,* Civil No. 72 H 298 (N.D.Ind. June 21, 1974), and *Noe v. County of Lake,* Civil No. 73 H 157 (N.D.Ind. Nov. 1, 1973), the claim of judicial immunity was rejected where plaintiffs sought no damages from the defendant judges.

A similar position with regard to judicial immunity has been recognized in other circuits. In *United States v. Clark,* 249 F.Supp. 720 (S.D.Ala.1965), a three-judge panel distinguished the doctrine as applying only:

> "*When those officials are faced with civil suits for damages in connection with performance of their official duties* . . . the principle that no State official—regardless of his position—is immune from having his conduct challenged—in the form of a preventive action—is well established. . . . Such an action involves no interference with judicial discretion since an injunction—if warranted by the evidence and if issued—will only prevent the doing of what there is no right to do." (footnotes omitted).

249 F.Supp. at 727–28. (Emphasis in original.) See *Conover v. Montemuro,* 477 F.2d 1073 (3d Cir. 1973); *Erdmann v. Stevens,* 458 F.2d 1205 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L. Ed.2d 147 (1972); *Javits v. Stevens,* 382 F.Supp. 131 (S.D.N.Y.1974); *Green v. City of Tampa,* 335 F.Supp. 293 (M. D.Fla.1971); *Bramlett v. Peterson,* supra.

In the present case, plaintiffs seek no money damages from these particular defendants. Plaintiffs rather seek injunctive and declaratory relief regarding the administrative and ministerial duties of Chief Judge Richards and Judge Meszar. Issuance of this equitable relief will "only order defendant [judges] to conform their conduct to the dictates of the law," *Boyd v. Adams,* supra, at 87, and "will only prevent the doing of what there is no right to do." *Clark,* supra, at 728. The doctrine of judicial

immunity has, therefore, no place in the instant cause.

Defendants cite several cases in support of their position that a judge is immune from liability for acts committed in his official capacity. They include: *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871); *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966); *Dieu v. Norton,* 411 F.2d 761 (7th Cir. 1969); *Byrne v. Kysar,* 347 F.2d 734 (7th Cir. 1965); *Duzynski v. Nosal,* 324 F.2d 924 (7th Cir. 1963).

Each case is clearly distinguishable and therefore inapplicable to the case at bar. Each case involved a suit against a state official for damages, and did not consider the propriety of equitable relief. In Pierson, the grant of certiorari was limited to "whether a local judge is liable for damages under § 1983 for an unconstitutional conviction." 386 U.S. at 551, 87 S.Ct. at 1216. Thus, the Court did not consider the issue of immunity from injunctive or other equitable relief. Similarly, *Bradley v. Fisher,* supra, involved a suit for damages by an attorney against a judge for striking his name from the role of attorneys. It is also worthy of note that *Bradley* involved a common law action for damages, and was not brought under any of the Civil Rights Acts.

Defendant cite the case, *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966), for the proposition that "judicial immunity is a defense to *any* action under § 1983." (Defendants' Memorandum, page 2). (Emphasis added.) It should be observed that *Bauers* likewise involved the liability in damages of a state official. Moreover, *Bauers* must be read in light of *Conover v. Montemura,* 477 F.2d 1073, 1096–1104 (3d Cir. 1973), wherein the Third Circuit explicitly stated that judicial immunity does not prohibit injunctive or other equitable relief.

Similarly, the cases cited by defendants from the Seventh Circuit, *Dieu v. Norton,* supra; *Byrne v. Kysar,* supra;

*Duzynski v. Nosal,* supra, all involved the recovery of damages in a § 1983 action. These cases must be read in view of the subsequent cases previously discussed: *Jacobson v. Schaeffer,* supra. *Littleton v. Berbling,* supra; *Boyd v. Adams,* supra, *Doe v. Ceci,* supra.

Defendants contend that they cannot be sued in their separate individual capacities in a § 1983 action. In support thereof, defendants cite the case of *Duzynski v. Nosal,* 324 F.2d 924 (7th Cir. 1963). *Duzynski* states that private individuals may not be sued in their individual capacity. *Duzynski* states that private individuals may not be sued under § 1983. It does not hold, however, that public officials may not be sued in their individual capacity. A brief examination of this case is in order here. Plaintiff had been committed to a mental institution. She brought this § 1983 action for damages alleging that she had been wrongfully committed. Two of the defendants included a physician who examined plaintiff and a county court clerk who signed the commitment petition. The court noted that, "[t]he main issue as to them [the clerk and the doctor], insofar as it pertains to Sec. 1983 of the Civil Rights Acts, is whether they acted 'under color of any statute, ordinance, regulation * * *.'" 324 F.2d 929. The court concluded that these defendants had not acted in their official capacities as employees of Cook County, Illinois. Rather, they acted purely as private individuals and could therefore not be sued under the Civil Rights Act. In reaching its conclusion, the court observed:

"We think it is hardly open to dispute but that Reines, while a clerk of the court, acted not in his official position but as a private citizen in signing the petition. Likewise, Skorodin, while an employee of the Cook County Mental Health Clinic, examined plaintiff and certified to her mental illness not as a county official but in his capacity as a private physician."

324 F.2d at 930. The court then noted that all of the cases cited by plaintiff in support of her position were, "without exception . . . against public officials in one form or another." Id. at 930. (Emphasis added.)

The accuracy of plaintiffs' interpretation is supported by subsequent cases in which Duzynski was cited with approval. For example, in *Schetter v. Heim,* 300 F.Supp. 1070 (E.D.Wis.1969), the court stated:

"Section 1983 has been held to apply solely and exclusively to acts by state officers who use their authority, or misuse it, or purport to use their authority (although, in fact, acting outside their official function) to deprive a person of federally protected rights. Private persons, although they may in fact deprive another person of federally protected rights, are not liable under § 1983." (citing *Duzynski*).

300 F.Supp. at 1074. See *Byrne v. Kysar,* 347 F.2d 734, 736 (7th Cir. 1965); *Ehn v. Price,* 372 F.Supp. 151, 152 (N. D.Ill.1974); *Holmes v. Silver Cross Hospital of Joliet, Illinois,* 340 F.Supp. 125, 135 (N.D.Ill.1972); *Weise v. Reisner,* 318 F.Supp. 580, 582 (E.D.Wis. 1970).

See also *Littleton v. Berbling,* 468 F. 2d 389 (7th Cir. 1972), where the named defendant was sued both "individually and as State's Attorney for Alexander County, Illinois." Although the court extensively discussed the doctrine of judicial immunity in § 1983 actions, it apparently found no inconsistencies or difficulties in the fact that the defendants were sued in both their official and individual capacities.

█ Therefore, it is entirely appropriate and proper for these particular defendants, Richards and Meszar, to be sued in their individual, as well as their official, capacities.

Therefore, the motion to dismiss of Richards and Meszar, is denied.